```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
────────────────────────────────────────

TY RAYNER, ON BEHALF OF HIMSELF AND
ALL OTHERS SIMILARLY SITUATED,
                                          16-cv-7129 (JGK)
                   Plaintiff,
                                          MEMORANDUM OPINION AND
        - against –                       ORDER

E*TRADE FINANCIAL CORPORATION ET AL,

                   Defendants.
────────────────────────────────────────
```

**JOHN G. KOELTL, District Judge:**

The defendants, E*TRADE Financial Corporation ("E*TRADE Financial") and E*TRADE Securities LLC ("E*TRADE Securities") (collectively, "E*TRADE"), provide brokerage services to clients, including by routing client orders to third-party trading venues to effectuate the purchase and sale of securities. The plaintiff, Ty Rayner, on behalf of a purported class claims that E*TRADE violates its fiduciary duties to its clients by routing orders to venues based on which venue makes the largest payments to E*TRADE in exchange for the orders, whereas E*TRADE should be selecting venues based only on best execution considerations. The plaintiff has brought claims against E*TRADE for breach of fiduciary duty, unjust enrichment, and declaratory judgment. E*TRADE has moved to dismiss the claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure because they are precluded by the Securities Litigation Uniform Standards Act (the "SLUSA").

1

The plaintiff originally brought this action in the United States District Court for the Northern District of California. The action was subsequently transferred to this Court pursuant to 28 U.S.C. § 1404 on the joint stipulation of the parties.[1] See Dkt. 26. This Court has jurisdiction pursuant to 28 U.S.C. § 1332(d)(2).

The plaintiffs in a related action have brought claims pursuant to sections 10(b) and 20(a) of the Securities Exchange Act of 1934 against E*TRADE and several individual defendants. See Schwab v. E Trade Financial Corporation, No. 16-cv-05891 (JGK) (S.D.N.Y.). Those claims are not presently before the Court.

For the following reasons, E*TRADE's motion to dismiss is **granted**.[2]

---

[1] Because this case was transferred pursuant to 28 U.S.C. § 1404, the law of the transferor court (including choice-of-law) governs issues of state law, while the substantive law of the transferee court governs issues of federal law. See, e.g., Rosado-Acha v. Red Bull Gmbh, No. 15 CIV. 7620 (KPF), 2016 WL 3636672, at *4-5 (S.D.N.Y. June 29, 2016) (quoting Ctr. Cadillac, Inc. v. Bank Leumi Trust Co. of N.Y., 808 F. Supp. 213, 224 (S.D.N.Y. 1992) aff'd, 99 F.3d 401 (2d Cir. 1995)). Neither party has raised any choice-of-law issues. Instead, the parties contend that this Court's interpretation of federal law (relying on any controlling law in the second circuit) governs any issues of federal law, and that New York law governs any issues of state law. Therefore, this Court will apply those bodies of law in accordance with the agreement of the parties. See, e.g., Am. Fuel Corp. v. Utah Energy Dev. Co., 122 F.3d 130, 134 (2d Cir. 1997).

[2] Because SLUSA preclusion provides a sufficient basis to dismiss the Complaint, it is unnecessary to reach E*TRADE's alternative

I.

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the allegations in the complaint are accepted as true, and all reasonable inferences must be drawn in the plaintiff's favor. McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007). The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985). The Court should not dismiss the complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

While the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions." Id.; see also Springer v. U.S. Bank Nat'l Ass'n, No. 15-cv-1107 (JGK),

---

arguments for dismissal related to regulatory preemption, the absence of any private right of action, and the plausibility of the allegations.

2015 WL 9462083, at *1 (S.D.N.Y. Dec. 23, 2015). When presented with a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, or matters of which judicial notice may be taken. Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002).

## II.

The allegations in the Complaint are accepted as true for the purposes of this motion to dismiss.

E*TRADE Financial Corporation is a Delaware corporation, with its principal place of business in New York, that provides brokerage and related services to individual retail investors. Compl. ¶ 7. E*TRADE Securities is a Delaware limited liability company that is an indirect, wholly owned subsidiary of E*TRADE Financial. Compl. ¶ 8. E*TRADE Securities is a broker-dealer registered with the Securities and Exchange Commission, and is the primary provider of brokerage products and services to E*TRADE Financial's customers. Compl. ¶ 8.

Brokers, such as E*TRADE, can route orders to third-party venues, such as the New Yok Stock Exchange, hedge funds, or banks. Compl. ¶ 9. A "non-directed, standing limit order" is a standard type of order that a client can place with E*TRADE.

Compl. ¶ 1 & n.1. "Non-directed" means that E*TRADE (as opposed to the client) chooses the trading venue for the order. Compl. ¶ 1 n.1. "Limit" is an instruction to buy or sell at, or better than, a specified price. Compl. ¶ 1 n.1. "Standing" means that the order will remain with the venue until it is canceled or executed, or until it expires. Compl. ¶ 1 n.1.

The Complaint alleges that, under the "maker-taker" model, venues make payments to brokerage firms, such as E*TRADE, in exchange for order flow. Compl. ¶ 10. The Complaint pejoratively characterizes these payments or rebates as "kickbacks." See, e.g., Compl. ¶¶ 1, 10. Under the maker-taker model, venues pay brokerage firms for sending (in other words, "making") orders to the venues, while venues charge brokers an access or "take" fee for "taking" the orders. Compl. ¶ 10. The Complaint alleges that venues compete for order flow by maximizing payment amounts to brokers. Compl. ¶ 10.

The Complaint alleges that E*TRADE owes its clients a "duty of best execution," meaning that E*TRADE should endeavor to obtain the best price possible for its clients when making venue routing selections. Compl. ¶¶ 15-17, 19. The Complaint alleges that relevant factors for E*TRADE's choice of venue must include the "likelihood of execution, speed of execution, and price improvement opportunity." Compl. ¶ 18. The Complaint alleges that the duty of best execution is "rooted in common law agency

5

principles of undivided loyalty and reasonable care" that "predate[] federal securities laws." Compl. ¶ 16. The Complaint alleges that E*TRADE publically touts that it "do[es] everything possible to seek best execution each and every time [a client] trade[s]." Compl. ¶ 17.

According to the Complaint, the maker-taker model creates perverse incentives that conflict with E*TRADE's duty of best execution to its clients. Compl. ¶¶ 10, 12-14. Rather than routing non-directed, standing limit orders in accordance with its duty of best execution, the Complaint alleges that E*TRADE routes those orders to the venues that make the highest payments to maximize "kickback" revenue, regardless of best execution considerations. Compl. ¶¶ 21-35. The Complaint alleges that, in 2012 and 2013, E*TRADE illicitly earned over $100 million in breach of its fiduciary duties to its clients, earnings that E*TRADE does not pass on to its clients. See Compl. ¶ 11, 30.

The plaintiff has been a client of E*TRADE since approximately 2006, and placed non-directed, standing limit orders with E*TRADE as recently as January 2014. Compl. ¶ 6. The relationship between the plaintiff and E*TRADE is governed by a Customer Agreement.³ It is undisputed that, during the relevant

---

³ The Customer Agreement is available at
https://us.etrade.com/e/t/estation/contexthelp?id=1209031000.
The plaintiff does not dispute that the Customer Agreement is integral to the Complaint, and thus properly before the Court.

period, E*TRADE disclosed to the plaintiff that it was receiving "remuneration" in exchange for routing orders to venues. See Customer Agreement § 6(n).

The maker-taker model, including the receipt of payments, is heavily regulated by the federal securities regime. See, e.g., Regulation NMS, Exchange Act Release No. 34-51808, 2005 WL 1364545 (June 9, 2005). The plaintiff does not allege that the receipt of such payments is inherently wrongful. Compl. ¶ 36. Rather, the Complaint alleges that E*TRADE victimized the plaintiff by prioritizing the receipt of rebates in routing his orders in violation of its duty of best execution, which resulted in the plaintiff's receipt of worse execution prices for those orders. Compl. ¶¶ 6, 46-48.

The plaintiff has brought claims for breach of fiduciary duty, unjust enrichment, and declaratory judgment seeking (1) damages for the difference between the price at which the securities transactions at issue were executed and the price at which they would have been executed had E*TRADE complied with its duty of best execution, Compl. ¶¶ 47-48; (2) disgorgement of the commissions and rebates E*TRADE "obtained in connection with

---

See, e.g., Clarex Ltd. v. Natixis Sec. Americas LLC, No. 12 CIV. 7908 (PAE), 2013 WL 3892898, at *2 (S.D.N.Y. July 29, 2013); Berman v. Sugo LLC, 580 F. Supp. 2d 191, 200 (S.D.N.Y. 2008). In any event, excluding the Customer Agreement would not change the outcome of this case because the Complaint itself provides a sufficient basis to conclude that the claims are subject to SLUSA preclusion.

7

routing the orders at issue," Compl. ¶ 54; (3) injunctive relief and an accounting, Compl. ¶ 49; and (4) a declaration that E*TRADE is violating its duty of best execution under state law, Compl. ¶¶ 56-57.

### III.

The SLUSA provides that "[n]o covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party alleging --- (A) a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security; or (B) that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security." 15 U.S.C. § 78bb(f)(1); see also Romano v. Kazacos, 609 F.3d 512, 519 (2d Cir. 2010). The SLUSA thus precludes actions that satisfy the following five elements: (1) a covered class action; (2) based on state law claims; (3) alleging that the defendant made a misrepresentation or omission, or employed any manipulative or deceptive device; (4) in connection with the purchase or sale of; (5) a covered security.

The Court of Appeals has instructed "that plaintiffs do not evade SLUSA by camouflaging allegations that satisfy this standard in the guise of allegations that do not. When the success of a class action claim depends on a showing that the

8

defendant committed false conduct conforming to SLUSA's specifications, the claim will be subject to SLUSA, notwithstanding that the claim asserts liability on the part of the defendant under a state law theory that does not include false conduct *as an essential element*—such as breach of a contractual right to fair dealing."[4] In re Kingate Mgmt. Ltd. Litig., 784 F.3d 128, 149 (2d Cir. 2015). "'SLUSA requires [a court's] attention to both the pleadings and the realities underlying the claims,' [and] plaintiffs cannot avoid SLUSA 'merely by consciously omitting references to securities or to the federal securities law.'" In re Herald, 730 F.3d 112, 119 (2d Cir. 2013) (quoting Romano, 609 F.3d at 519).

At least three courts have relied on similar reasoning to conclude that claims based on allegations nearly identical to those in the Complaint are precluded by the SLUSA. E.g., Zola v. TD Ameritrade, Inc., 172 F. Supp. 3d 1055, 1072 (D. Neb. 2016); Lewis v. Scottrade, Inc., No. 4:15-CV-01255 (JAR), 2016 WL 4502534, at *3 (E.D. Mo. Aug. 29, 2016); Lim v. Charles Schwab & Co., No. 15-CV-02074 (RS), 2015 WL 7996475, at *7 (N.D. Cal. Dec. 7, 2015) (citing Kingate, 784 F.3d at 150); see also United States Sec. & Exch. Comm'n v. Crowe, No. 2:16-CV-36, 2016 WL 6125401, at *10-11 (S.D. Ohio Oct. 20, 2016) (citing Zola and

---

[4] The plaintiff argues that fraud is not an element of any of the claims at issue, but Kingate rejected such a requirement for SLUSA preclusion purposes.

Lim approvingly). The plaintiff makes no meaningful effort to distinguish these cases, which are compelling.

The plaintiff concedes the first, second, and fifth elements necessary for a finding of SLUSA preclusion: First, the Complaint is a covered class action; second, based on state law claims; and, fifth, regarding covered securities. The plaintiff only disputes the third and fourth elements: "misrepresentation or omission of a material fact" or "that the defendant used or employed any manipulative or deceptive device or contrivance"; and "in connection with" the purchase or sale of a covered security. The plaintiff's arguments against preclusion are unpersuasive.

With respect to the third element, the plaintiff argues that this action only challenges E*TRADE's underlying practices regarding its selection of venues when routing orders; indeed, the Complaint is explicit that it is not "challeng[ing] E*TRADE's disclosure of maker kickbacks." Compl. ¶ 36. This is artful pleading designed to avoid SLUSA preclusion. See Kingate, 784 F.3d at 149. The plaintiff attempts to characterize this action as challenging E*TRADE's failure to act with due diligence in selecting venues, but the Complaint alleges far more deceptive conduct.

The action is predicated on material misrepresentations and omissions that were designed to induce clients to execute non-

10

directed, standing limit orders with E*TRADE even though E*TRADE allegedly had no intention of fulfilling its purported fiduciary obligations. See Holtz v. JPMorgan Chase Bank, N.A., 846 F.3d 928, 932 (7th Cir. 2017) ("A fiduciary that makes a securities trade without disclosing a conflict of interest violates federal securities law. . . . [A] broker-dealer that fails to achieve best execution for a customer by arranging a trade whose terms favor the dealer rather than the client has a securities problem, not just a state-law contract or fiduciary-duty problem."); Goldberg v. Bank of Am., N.A., 846 F.3d 913, 916 (7th Cir. 2017) (per curiam) ("A claim that a fiduciary that trades in securities for a customer's account has taken secret side payments is well inside the bounds of securities law."). E*TRADE touted that it routed orders in accordance with its duty of best execution, see Compl. ¶ 17, when it was allegedly allowing its receipt of kickbacks to interfere with that duty, which it concealed from its clients. Compl. ¶ 21. "The alleged deception relates to the value of the security because [the defendant] represents it obtains the best possible price for its customers but delivers something less . . . ." Zola, 172 F. Supp. 3d at 1073; see also Lim, 2015 WL 7996475, at *6. "[T]he gravamen of [the plaintiff's] claims is that [the defendant] failed to disclose that it was operating under a conflict of interest with regard to its order-routing process or that it was

11

not achieving, or at least approximating, best execution." Lewis, 2016 WL 4502534, at *5.

The underlying conduct cannot be disentangled from the misrepresentations or omissions because the claims necessarily contemplate E*TRADE's allegedly deceptive representations to the plaintiff regarding its execution practices. The plaintiff's claims necessarily challenge what E*TRADE told the plaintiff about its execution practices, and the nature of E*TRADE's obligations to the plaintiff. See BAII Banking Corp. v. UPG, Inc., 985 F.2d 685, 700-01 (2d Cir. 1993) (discussing broker disclosure obligations to principals under New York law). In arguing that the Complaint states a claim, the plaintiff notes that E*TRADE disclosed to the plaintiff only that it would "be receiving payments" from venues, but failed to disclose any information "about E*TRADE's consideration of those payments in determining where to send order flows." Pl.'s Mem. Op. at 22. The plaintiff argues that, "*By doing so, [E*TRADE] breached its fiduciary duty*." Pl.'s Mem. Op. at 22 (emphasis added). The argument demonstrates that "the success of [the plaintiff's] claim[s] depends on a showing that [E*TRADE] committed false conduct . . . ." Kingate, 784 F.3d at 149.

Likewise, "the SEC considers the failure to provide best execution a possible 'manipulative, deceptive or other[wise] fraudulent device.'" Lim, 2015 WL 7996475, at *5 (quoting In Re:

12

Morgan Stanley & Co Inc., Exchange Act Release No. 55726, 2007 WL 1364323, at *8 (May 9, 2007)). In this case, the plaintiff alleges that E*TRADE routed orders to "maximize kickback revenue" in violation of its duty of best execution, a practice concealed from its clients. Compl. ¶ 21. The plaintiff's claims implicate E*TRADE's use or employment of a manipulative or deceptive device or contrivance within the meaning of the SLUSA. See Lim, 2015 WL 7996475, at *5; see also Kurz v. Fid. Mgmt. & Research Co., 556 F.3d 639, 642 (7th Cir. 2009) (finding SLUSA preclusion and noting "[h]ow [a portfolio manager] discharges its duties toward investors is a subject requiring disclosure under federal law"); Prager v. Knight/Trimark Grp., Inc., 124 F. Supp. 2d 229, 235 (D.N.J. 2000) (finding SLUSA preclusion where "[a market maker] made false and misleading statements upon which it intended that plaintiff rely and engaged in a pattern and practice of trading in advance of its retail customers and the selling or buying at a profit at the expense of its customers").[5]

---

[5] The cases cited by the plaintiff where "the gravamen of the Complaint [was] plainly a straightforward breach [of contract] claim" do not aid the plaintiff. Norman v. Salomon Smith Barney, Inc., 350 F. Supp. 2d 382, 386-87 (S.D.N.Y. 2004) ("[N]o allegation of fraud, misrepresentation or omission 'in connection with' the purchase or sale of securities."); see also Merryman v. J.P. Morgan Chase Bank, N.A., No. 15-CV-9188 (VEC), 2016 WL 5477776, at *5-6 (S.D.N.Y. Sept. 29, 2016) (noting that the fraudulent conduct related only to the plaintiffs' attempt to overcome the defendant's statute of limitations defense and

With respect to the fourth element, the Supreme Court has held that the "in connection with" element is satisfied when the alleged fraud "coincide[s] with a securities transaction." Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit, 547 U.S. 71, 85 (2006). The alleged fraud in this case plainly coincided with the securities transactions at issue. "Claims involving alleged violations of the duty imposed on a broker to obtain best execution for customers in executing portfolio transactions are claims 'in connection with' the purchase or sale of securities for SLUSA purposes." Zola, 172 F. Supp. 3d at 1071 (collecting cases); see also Lewis, 2016 WL 4502534, at *3-4.

The plaintiff's arguments to the contrary are without merit. See Zola, 172 F. Supp. 3d at 1072 ("Any argument that the duty of best execution is not in connection with the purchase or sale of securities is frivolous." (quoting Kurz, 556 F.3d at 642)). The plaintiff contends that the Supreme Court's decision in Chadbourne & Parke LLP v. Troice, 134 S. Ct. 1058 (2014), substantially elevated the "coincide" standard set forth in

---

holding that the "[f]ailure to disclose is not essential to Plaintiffs' breach of contract claim; indeed, Plaintiffs allege that [the defendant's] breach of contract continues, even though JPM disclosed the spread in 2012"). In this case, the allegedly fraudulent conduct is inextricably intertwined with the claims at issue.

Likewise, the cases cited by the plaintiff where third-parties, but not the named defendants, committed fraudulent conduct are inapposite. See, e.g., Kingate, 784 F.3d at 151-52; Fishman v. Philadelphia Fin. Life Assurance Co., No. 11-CV-1283, 2016 WL 2347921, at *9 (S.D.N.Y. May 3, 2016).

Dabit with respect to the purchase and sale of covered securities. But Troice was explicit that it was not modifying the Dabit "coincide" standard. See Troice, 134 S. Ct. at 1066 ("We do not here modify Dabit.").

Troice's lessons are inapplicable to this case. Troice addressed fraudulent conduct in connection with the purchase or sale of uncovered securities that merely had a tangential relationship to the purchase or sale of covered securities. Id. Such allegations do not fall within the SLUSA unless the fraudulent conduct with respect to the uncovered securities is material to the purchase or sale of the covered securities. Id.

As the Court of Appeals for the Second Circuit explained in In re Herald, 753 F.3d 110 (2d Cir. 2014) (per curiam), Troice involved a situation where the plaintiffs "were not seeking, directly or indirectly, to purchase covered securities" and "was entirely distinguishable from 'a victim who took, *tried to take*, or maintained an ownership position in the statutorily relevant securities through "purchases" or "sales" induced by the fraud.'" Herald, 753 F.3d at 113. The plaintiff falls into the latter category. The plaintiff undisputedly took positions in covered securities through E*TRADE, and his purchase (or sale) decisions were materially affected by E*TRADE's allegedly false promises to execute his orders consistent with its duty of best execution, which would have resulted in acquisitions (or

15

divestments) at allegedly better prices than what he actually obtained.

The plaintiff's contention that the fraudulent conduct did not affect the plaintiff's perceived value of the securities and thus affected only the plaintiff's decision regarding which broker to use, but not which securities to trade, is baseless. See Lim, 2015 WL 7996475, at *6-7 (rejecting an identical argument); see also Holtz, 846 F.3d at 933–34 ("That some of the investment decisions were made by investment advisers as [the plaintiff's] agent does not take this out of the 'in connection with' domain—otherwise suitability and churning could not be a securities theory."). The plaintiff's arguments that he stated a claim belie his arguments against SLUSA preclusion: "Plaintiff alleges that by selecting the trading venues that provide the highest kickbacks to E*TRADE, Plaintiff and the Class did not receive the best market price." Pl.'s Mem. Op. at 23 (citing Compl. ¶¶ 34, 47). Thus, "The contention that plaintiffs made investment decisions without regard to the price at which their orders were filled is, at bedrock, simply implausible," Zola, 172 F. Supp. 3d at 1073 (quoting Lim, 2015 WL 7996475, at *7), especially in light of the damages that the plaintiff is seeking.

In a letter following oral argument on the current motion, counsel for the plaintiff asserted that she misspoke at oral

16

argument when she stated that "the damages sought [by the plaintiff] are the increased price paid for a trade." Dkt. 55. But such increased prices are in fact among the damages sought by the plaintiff. See Compl. ¶ 48 (E*TRADE's "material and opportunistic breaches . . . have also caused the orders made by Plaintiff and the Class to be executed in a manner that did not fulfill best execution. E*TRADE's customers have been damaged thereby, in an amount to be determined at trial."). And the plaintiff also argued on the motion that E*TRADE did not obtain the best price possible for the plaintiff because of its pursuit of the highest kickbacks. See Pl.'s Mem. Op. at 23 (citing Compl. ¶¶ 34, 47).

Moreover, the plaintiff's attempt to cabin damages to the disgorgement of supposedly illicit commissions and rebates does not alter the "in connection with" analysis. The Complaint is explicit that those "commissions and kickbacks [were] obtained *in connection with* routing the orders at issue." Compl. ¶ 54 (emphasis added). E*TRADE earned allegedly illicit profits by routing orders on behalf of the plaintiff (thus, in connection with the purchase or sale of covered securities), and, unlike other brokers, by failing to pass those payments on to the plaintiff; in other words, the plaintiff paid higher prices that would have been lower had E*TRADE applied the payments to decrease the plaintiff's costs. See Compl. ¶ 52. ("E*TRADE does

17

not pass on the rebate payments that it receives for routing the orders of Plaintiff and Class members to particular trading venues."). The challenged conduct --- E*TRADE's receipt of payments that affected the way in which it executed the purchase or sale of securities on behalf of the plaintiff --- was clearly in connection with the purchase or sale of covered securities.

The Court of Appeals has instructed that SLUSA preclusion must be assessed on a "claim-by-claim basis." Kingate, 784 F.3d at 143. Each of the claims in this case relies on the deceptive and manipulative conduct described above and is precluded by the SLUSA. See Compl. ¶¶ 47, 51, 56. Moreover, the plaintiff conceded at oral argument that there is no basis to distinguish among the claims for purposes of SLUSA preclusion. Accordingly, the claims are **dismissed** because they are precluded by the SLUSA.[6]

## CONCLUSION

The Court has considered all of the arguments raised by the parties. To the extent not specifically addressed, the arguments are either moot or without merit. For the foregoing reasons, E*TRADE's motion to dismiss the Complaint is **granted**. The Clerk

---

[6] The plaintiff has not sought leave to replead, and made clear at oral argument that he does not wish to replead in the event that the claims are precluded by the SLUSA. In addition, the parties agree that the plaintiff is a member of the proposed securities class in the securities action currently pending before this Court. See Schwab v. E Trade Financial Corporation, No. 16-cv-05891 (JGK) (S.D.N.Y.).

is directed to enter judgment dismissing this action and closing the case. The Clerk is also directed to close all pending motions.

**SO ORDERED.**

**Dated:** **New York, New York**
**April 1, 2017**           _____/s/_____
                                     **John G. Koeltl**
                            **United States District Judge**